48    23|
72    992|

## E. MARQUEZE et al. v. J. L.CALDWELL.

1. STATUTORY CONSTRUCTION—GENERAL RULE.—When an English statute, which has received a fixed judicial construction by the English courts, is enacted by this state, it is adopted with the interpretation already placed upon it.

2. STATUTE OF FRAUDS.—The statute of frauds does not require that the contract shall be signed by both the contracting parties, but only by the party sought to be charged.

3. SPECIFIC PERFORMANCE.—Specific performance will be decreed against the party who signed the contract, although the other party did not sign, and although there is no mutuality of remedies between the parties.

APPEAL from the chancery court of Holmes county. HOOKER, Chancellor.

The opinion of the court contains a statement of the case.

*J. E. Gwin,* for appellants.

The statute of frauds provides that "no action shall be brought on any contract or sale of lands," * * * "or any interest in or concerning them, unless the agreement or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith, or some other person by him lawfully authorized."

A contract, *in fieri,* as long as it fails to come within the statute, though not enforceable at law, would be

regarded by construction as performed by a court of equity. Adams Eq. 85, 86.

If possession has been delivered, and the party allowed to make valuable improvements, a refusal to complete the contract would be treated in equity as a fraud and re- garded as performed. Ib. 248, 249.

Part performance will take a case out of the statute. Ib. 247 and 248, and cases cited by the author; 8 N. H. 9; 13 Conn. 478; 14 Johns. 15; 9 N. H. 38; 5 Md. 18; 24 Penn. St. 28; 11 Texas, 87; 3 Green. Ch. 59.

In the case at bar there was both delivery of posses- sion and part payment of the purchase money.

Jurisdiction is universally maintained in suits for specific performance of contracts respecting lands. Story Eq. Jur. 747.

It was held in Eggleston v. Matthews, 6 East, 410, that a contract for personal property, signed by the pur- chaser and not by the seller, was a sufficient compliance with the statute.

The statute only requires the contract to be signed by the party to be charged. Sug. on Vendors, 114; 1 Smith Lead. Cas. (6th Am. ed.) 321, §§ 2, 4; 13 Mass. 87; 2 Pars. 290, note *u*; Sims v. Hutchinson, 8 S. & M. 328; Hairston v. Jordon, 42 Miss. 477.

By the word party in the statute is not meant the party as to a deed, but person in general. Sug. on Ven- dors, 114, § 2; 3 Atk. 503.

In Egerton v. Matthews, *supra*, it was contended that there was no mutuality in the contract, but the court held the agreement to be valid. 6 East, 410; see also 1 Smith Lead. Cas. 321.

Admitting, however, that both parties should have signed, still the contract is valid, for the signing of an agent duly authorized is a compliance with the statute. See section one of statute.

A party may be bound by his signature, though he

sign in form as a witness.  1 Sug. 129; 3 Atk. 503; 9 Ves. Jr. 251; 2 Pars. 289, and cases cited.

Assuming that both parties should have signed, and both been bound by the contract to entitle the complainant to specific performance, the objection is not by a tender of the deed and a filing of the bill, a mutuality of obligation being thus given.  Martin v. Mitchell, 2 Jacob & Walker Ch. 425; 1 Chitty Eq. Dig. 45.

Lee v. Dozier, 40 Miss. 477, relied upon by counsel for appellee, cannot be considered as conclusive or as overturning former decisions, because it was decided in reference to a question of Louisiana law, and without any allusion to, or consideration of, the former adjudications in this state.

An eminent author says, "that words inadvertently dropped from the mouth of a good and great judge, are too often, by artful attorneys, taken hold of and used as precedents."

It is insisted that complainant is entitled to relief on the following grounds:

1. The contract contemplated the delivery of a deed of conveyance, and the cotemporaneous payment of the first installment of the purchase money; it then became a complete and mutual contract when the deed was tendered.

2. The contract was signed by the authorized agent of appellant.

3. The statute was complied with by the filing of the bill and the tender of the deed.

*Frank Johnston*, on the same side.

I. At the outset the question is presented, whether the contract is within the statute of frauds, and for that reson void.  It has been uniformly held by both the English and American authorities, that the statute only requires the signature of the party to be charged.  Justice v. Lang, 42 N. Y. 493; Russell v. Nicol, 3 Wend

112; Morrall v. Mum, 1 Seld. 246 ; Fenley v. Stewart, 5 Sand. 101; Woodward v. Aspinwall, 3 Sand. 276 ; Sims v. Hutchins, 8 S. & M. 328.

These cases cover two branches of the statute, viz.: Agreements for the sale of personal property not to be performed within one year, and contracts concerning the sale of land. The rule of construction is the same in each.

I submit that the case now presented clearly is not within the statute, and therefore is not void.

II. The objection urged to the bill, however, and upon which counsel for appellees, in his written argument and brief, relies, is that there is a want of mutuality of obligations and remedies; that one party cannot enforce the contract, and as a consequence the other ought not, in equity, to be entitled to specific performance.

The statute is thus only incidentally involved as the cause of the inequality of remedies, and the obstacle that prevents an enforcement of the contract at the instance of one of the parties. The question, in the precise form stated, is not a new one, but may be now regarded as fully adjudicated.

Aside from the provisions of the statute, the contract is valid; and, having demonstrated that it does not come within the terms of the statute, it remains only to test it by the common law principles governing contracts.

There is no rule at common law requiring that such an agreement should be signed by both the contracting parties, or, indeed, that it should be in writing at all. As originally made, it is mutual in its covenants; the promise of the vendee creating an implied obligation on the part of the vendor to convey the title upon payment of the purchase money. The difficulty, therefore, cannot be that the contract, as originally entered into, is not mutual; but that one of the parties has not obtained the evidence which the statute requires him to produce to bind the other. 1 Pars. on Cont. 9, 10.

Chancellor Kent, in Clason v. Bailey, said: "The remedy in such case is not mutual; but, notwithstanding this objection, it appears from a review of the cases that the point is too well settled to be now questioned." 14 Johns. 490; Woodward v Aspinwall, *supra;* McCrea v. Purmont, 16 Wend. 465; Hunter v. Seton, 7 Ves. Ch. 275, 279; Allen v. Bennett, 3 Taunt. 176; Fenley v. Stewart, 5 Sand. 102; Browne on Statute of Frauds, 366.

The attention of the court is particularly invited to the opinion in Justice v. Lang, *supra,* as it is well considered, and contains an elaborate review and examination of the authorities on the question.

In determining the rights of the complainant, the contract must be considered on general principles and entirely apart from the statute. The case is thus in effect narrowed to the inquiry as to whether there is a consideration to support the verdee's promise to pay the purchase money.

In the case last cited, and also in Hall v. Center, 40 Cal. 66, this direction was observed and demonstrated, the question of consideration alone was made the test of the plaintiff's right of recovery.

It seems clear that this is the ground upon which the whole case should be placed.

The vendee's promise was on the express condition that the vendor should execute and deliver to him a deed conveying the land. It was impossible for the latter to enforce the payment of the money without complying with his covenant to convey the property. Upon a conveyance of the land, therefore, the vendee would acquire all that he stipulated for, and upon the exact terms and conditions of his contract.

III. Counsel for the appellee relies upon two cases to sustain his demurrer. Sims v. Hutchins is not directly in point, but by analogy supports the theory of the bill. Lee v. Dozier did not involve the question; and the

opinion intimated by Ellett, J., is clearly an *obiter dictum.* The point really presented was the propriety of allowing the defendant to file a plea *puis darrien continuance.*

*J. A. P. Campbell,* for appellee.

If this case was decided wrong in the court below, it was because the chancellor was misled by this court in the case of Hairston v. Jordon, 42 Miss.

In that case this court invested with the authority of judicial decision the serious doubt expressed by Lord Redesdale in the case of Lawrence v. Butler, 1 Sch. & Lef. 13, and felt by other able judges in our own country as to the propriety of enforcing a contract where both parties are not reciprocally bound.

In the case at bar the agreement was not mutually obligatory. It was executory, and as appellee had no valid claim on appellants to convey the land, his agreement was without consideration and not enforceable against him.

The principle in Hairston v. Jordon is the same with that involved in this case, i. e. invalidity of the contract for the sale of the land. In that case the vendee had paid; in this he had only agreed to pay. If the vendee could recover money actually paid, *a fortiori* may he refuse to pay. That contract was pronounced " executory." This is more completely so. In that the vendor had ever been willing, and had offered to convey before suit by the vendee to recover money paid, and tendered a deed with his plea, as he had done before suit, but he was compelled to pay back money actually received, and undo what had been executed because the contract was not valid. As to the money paid the contract was completely executed by the vendee. But the court said it should be undone because the contract was " executory." *Pro tanto* it was executed.

It is true in this case the vendee signed a written promise to pay, and in this consists the difference in

the facts of this case and Hairston v. Jordon, but the principle is the same. In the case cited, the thing done, not merely promised, was held revocable, at the option of the vendee. If that which is done, can be undone, why shall not that which is promised be resisted ?  *Cui bono* the enforcement of that which, if it had been done voluntarily, could be undone at the instance of the party who did it.

Courts which enforce such unilateral contracts, place it on the ground that the object of the statute of frauds is fully accomplished by the signing of one party. The object of that statute is " to prevent frauds and perjuries." Now, there is no dánger of imposition on him who has paid, except as to what the vendor is to do, and in that respect there can be no difference between payment and a promise to pay. The liability to fraud on the rights of the vendee is the same in both cases. The opportunity for perjury (and the temptation) is as great in the one as in the other.

The doctrine of the sufficiency of signing by one party, as a compliance with the' statute of frauds, has been much questioned.  3 Lead. Cas. Eq. 92–93.

The courts which hold signing by the party sued sufficient without the other, also hold that part performance will take a case out of the statute. They hold that the vendor, who has conveyed in pursuance of a verbal contract, may recover the price.

This court repudiates this doctrine. Let it be consistent in adherence to its settled construction of the statute of frauds, and repudiate the doctrine that a unilateral contract for the purchase of land is enforceable.

Mutuality of obligation is necessary to specific performance of a contract.

On the question of the effect of the signing by the agent of the vendor, see Gasbell v. Archer, 2 Adol. & Ell. 500 ; Doe & Spilsbury v. Burdett, 9 ib. 971.

But this question did not properly arise on the de-murrer. There is no sufficient allegation in the bill on this subject, and the exhibit cannot be called to its aid to help out the bill on a demurrer, as has been decided by this court.

SIMRALL, J. :

J. L. Caldwell agreed to purchase the lands in the pleadings mentioned, from E. Marqueze, who held in trust for sundry parties, for the price of *   *   * , one-half to be paid in cash, and the other half eight months after the date of the deed, which was to be made by E. Marqueze. The agreement was signed by Caldwell, and R. S. Richey, witness.

The question made is, whether Marqueze, trustee, and the parties for whom he acted as trustee, can have a specific performance of the contract. Caldwell main-tains that there is no mutuality in the obligation ; that he has no remedy upon it against the complainants, and therefore it ought not to be enforced at their suit against him.

The 4th section of the English statute of frauds and perjuries, after enumerating the several classes of con-tracts required to be in writing, contains these words : "Unless the agreement upon which action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged there-with, or some person thereto by him lawfully author-ized." The first section of our statute, Code of 1857, p. 358, is as follows : "Unless the promise or agreement upon which such action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him or her thereunto lawfully authorized." It will be observed that the words of our statute as to the "signing" is an exact counterpart of the British original.

It is a doctrine of the American courts, very generally accepted, that when a state enacts a British statute which has received, in the mother country, a fixed and established judicial interpretation, the legislature will be supposed to adopt the statute with the interpretation put upon it. The principle has been several times recognized in this court, with respect to statutes borrowed from other states.

If an old statute incorporated into our jurisprudence, having frequent and important bearing and application to the business and prosperity of the community, has received a uniform exposition in the country or state from which it was borrowed, it is reasonable to assume that the legislature intended to introduce into our law the statute, with the judicial exposition of it. If the very words of the original are used, it is legitimate to presume that they were employed to prevent confusion and uncertainty, and to bring with the statute the precise and definite meaning which the judiciary, by exposition, has put upon it.

The statute exacts that the contract or agreement, or some note or memorandum thereof, shall be signed by the person to be charged. It is said by Sugden on Vendors, p. 99, " that he who signs will be bound, although the other party did not sign." If the suit be against the party who signs, the statute is satisfied, for he is the party charged. This author states that this view of the statute has been sustained by the authority, Lord Keepers, North and Wright, Lord Hardwicke, Ch. Bar. Smith, Lord Eldon, Thurlow and Sir William Grant. Browne in his Treatise on the Statute, p. 385, says: " It is now uniformly held that the signature of the defendant in the suit, alone, or the party who is to be charged upon the agreement, is sufficient." The English cases to that effect are, in part, Lathorp v. Bryant, 2 Bing. N. C. 755; Huddestone v. Briscoe, 11 Vesey, 583; Hatten v. Gray, 2 Ch. Cas. 164; Seten v. Stade,

7 Ves. 265; Foule v. Freeman, 9 Vesey, 351; Schnider v. Norris, 2 M. & S. 286; Allen v. Bennett, 3 Taunt. 173; Martin v. Michell, 2 Jac. & Walk. 426. Such was the current of decision until Lord Redesdale questioned the soundness of the principle in Lawrenson v. Butler, 1 Sch. & Lef. 13, on the suggestion that if the agreement was disadvantageous to the party who signed, he was liable to the performance, and yet, if advantageous, he could not compel the other party to perform. The authority of the great equity judge caused the courts to pause and reconsider the subject. They, however, soon settled down upon the original interpretation, resting the determination upon the unqualified language of the statute, and upon the further reason, that the plaintiff by filing the bill has made the remedy mutual. 3 Ball & Beat. 363; 1 Russ. & M. 391. Chancellor Kent in Clason v. Bailey, 14 Johns., after a very thorough review of the English cases, came to the conclusion that "the point is too well settled to be now questioned." In Parkhurst v. Van Courtlandt, 1 Johns. Ch. 282, and Benedict v. Lynch, ib. 370, the same learned judge had intimated a contrary opinion, because of the want of mutuality in the agreement. In his judgment, in Clason v. Bailey, he refers to the former inclination of his mind, but adds, "notwithstanding this objection," the point is concluded on authority. Subsequent cases in New York treat the question as at rest; McCrea v. Purmort, 16 Wend. 465; Fenly v. Stewart, 5 Sandf. 105; where the court remark upon the statute that it " does not require that the contract shall be signed by both parties, but by the party to be charged thereby," that is the defendant to the suit. To the same point are the cases of Barton v. Gray, 3 Greenl. (Me.) 409; Douglass v. Spear, 2 Nott & McCord, 209; Cosach v. Descondes, 1 McCord, 425; Penniman v. Hartshorn, 13 Mass. 87; Lourey v. McHaffy, 10 Watts (Penn.) 387; Ives v. Hazard, 4 R. I. 14; Sans v. Tripp, 10 Rich.

(S. C.) 447; Old Colony R. R. v. Evans, 6 Gray (Mass.), 25; Shirly v. Shirly, 7 Blackf. (Ind.) 454. An examination into the authorities in this country and in England, discovers that the Lord Redesdale made a single departure from the current of authority, which brought Lord Eldon to pause and express a doubt; Lord Redesdale was dissented from or overruled by his immediate successor. In this country, Chancellor Kent was inclined to follow the great Irish chancellor, subsequently abandoned his first opinion, and admitted that the question was concluded by the weight and uniformity of authority.

This examination of the general subject seemed to be necessary because it was supposed by counsel that there was a conflict in the adjudications in this state. Sims v. Hutchinson, 8 S. & M. 328; Lee v. Dozier, 40 Miss. 481, and Hairston v. Jordon, 42 ib. 385, are the cases referred to. The last was a verbal executory contract for the sale of land. The vendor sued for the purchase money. The court held that the case falls directly within the statute which denies an action unless the contract be in writing. Sims v. Hutchinson went to the point, that a verbal contract for the sale of land was voidable merely, and not absolutely void. Neither party can compel the other to perform. If the vendee has advanced money in part payment, he cannot recover it back if the vendor is willing to convey. In Lee v. Dozier the defendant attempted to set up, by plea "*puis darrier continuance*," that a certain agreement for the sale of land to the defendant in Louisana was not obligatory, for the want of his, the defendant's, signature thereto. Commenting on cases cited by counsel (4 Mar. N. S. 260; 6 La. Rep. 530), the court say: " The cases cited seem to go only to the extent which commands our full approval, that where the agreement contains stipulations on both sides, and is obviously intended to be executed by both parties, the signature of one party

will not be binding on him until the other party signs also." These observations were thrown out by the learned judge, when considering whether the plea contained new matter arising since the last continuance, and was held bad because it did not. It was not necessary to the decision of that point. If, indeed, it was meant to be affirmed that the signature of both parties to the agreement was necessary under the statute, and no suit or action would lie against him who signed, unless the other party also signed, we would not feel bound by it since it was not a question involved.

We are of opinion that this suit for performance can be maintained against Caldwell, although Marqueze, the trustee, did not sign the agreement. The signature of the defendant sought in the suit to be charged, meets the words of the statute, and that interpretation is sustained by a force and continuous current of authority in England and in this country, which ought to and does put the question at rest.

Wherefore the decree of the chancellor, sustaining the demurrer and dismissing the bill, is reversed. Judgment here overruling the demurrer and cause remanded, with leave to defendant to plead or answer in forty days from this date.