OLD LADIES HOME ASS'N v. GRUBBS' ESTATE.

(In Banc.  Dec. 23, 1940.  Suggestion of Error Overruled May 26, 1941.)

[199 So. 287.  No. 34384.]

W. H. Watkins, Lyell & Lyell, and Green & Green, all of Jackson, and John B. Brunini, of Vicksburg, for appellant.

Thomas Mitchell, of Magnolia, for appellee.

**Green & Green**, of Jackson, for appellant, on suggestion of error.

**McGehee, J.,** delivered the opinion of the court.

This appeal involves the construction of Sections 269 and 270 of the Constitution of 1890, as applied to certain devises of real estate and money, respectively, made to the Old Ladies' Home in Jackson, Mississippi. From a decree which held that both of such devises were void, the appeal here was taken by the Old Ladies' Home Association, a corporation under the laws of this State, duly chartered pursuant to the provisions of Chapter 25, Section 832 et seq., Code of 1892, for the purpose of establishing and maintaining a home for aged and destitute women in the State of Mississippi.

The cause originated in the court below on petition of the executor of the last will and testament of Mrs. Quinnie Varnado Grubbs, who died at Osyka, Mississippi, on August 8, 1938, wherein a construction of the will was sought to determine whether it violated the sections of the Constitution here involved in that it provided (1) that "the house and lot now owned by me in the Town of Osyka shall be given to the Old Ladies' Home in Jackson, Mississippi;" and (2) that "any monies remaining after all expenses shall have been met shall likewise go to the Old Ladies' Home in Jackson, Mississippi." The expenses referred to related to minor items mentioned in the will and the expenses of the administration of the estate. A pleading was then filed by the appellant, the

Old Ladies' Home Association, setting forth the reasons for its contention that these devises should be upheld. Thereupon, a demurrer was sustained to this pleading, the effect of which action was to hold that the gift of the real estate violated Section 269 and that the gift of the money was in violation of Section 270 of the Constitution of 1890.

Section 269 of the Constitution provides, among other things, that: ''Every devise or bequest of lands, . . . contained in any last will and testament, . . . in favor of any religious or ecclesiastical corporation, sole or aggregate, or any religious or ecclesiastical society, or to any religious denomination or association of persons, or to any person or body politic, in trust, either express or implied, secret or resulting, either for the use and benefit of such religious corporation, society, denomination, or association, or for the purpose of being given or appropriated to charitable uses or purposes, shall be null and void, . . .'' The appellant, the Old Ladies' Home Association, is a body politic within the meaning of this section of the Constitution, and the land in question was given to be appropriated to a charitable use or purpose. Therefore, the remaining question to be decided is whether the devise of the land was in trust, either express or implied.

In the case of Blackbourn v. Tucker et al., 72 Miss. 735, 17 So. 737, wherein A. L. Blackbourn, after some small bequests to his wife, devised and bequeathed the remainder of his estate, real and personal, to the Senatobia Educational Association, to be applied ''in maintaining and keeping in a prosperous condition that institution of learning owned by said association, and known as the 'Blackbourn College for Girls,' in Senatobia, Mississippi, or in both maintaining said college and erecting such additional and suitable buildings to said college as their judgment may dictate, having always in view the best interest of said institution,'' it was held that the bequests of the real estate was void under

Section 269 of the Constitution, and that the devise of the personal property was valid under Section 270 thereof. The basis on which the distinction was made was that the first section prohibited a devise of land in trust for charitable use, not only to any religious or ecclesiastical corporation, religious or ecclesiastical association, or any religious denomination or association of persons, but also to any person or body politic, and that the latter section only prohibited a legacy, gift or bequest of money, or other personal property, in favor of any religious or ecclesiastical corporation, religious or ecclesiastical society, or to any religious denomination or association, for such purposes, and not those in favor of any body politic other than religious or ecclesiastical corporations, societies or associations.

The decision in the Blackbourn case is therefore controlling here to uphold the gift of the testatrix in the case at bar as to the gift of any money to the Old Ladies' Home which should remain after the payment of the expenses referred to, on the ground that the said Home is not a religious or ecclesiastical corporation, society or association; and it is also controlling to defeat the devise of the land on the ground that Section 269 prohibits such a devise to any body politic, in trust, either express or implied, for the purpose of being given or appropriated for charitable uses or purposes, for the reason that while the testatrix did not expressly provide in her will that the land, or the proceeds from any disposition thereof, should be devoted to the promotion of the comfort and welfare of the inmates of the Old Ladies' Home, such an intention and purpose is clearly to be implied. It is stated in Rest., Trusts, Paragraph 24, Subsection 2, that "No particular form of words or conduct is necessary for the manifestation of intention to create a trust." Also see Greely v. Houston, 148 Miss. 799, 114 So. 740.

Chapter 25, Code of Mississippi in 1892, under which the Old Ladies' Home Association was first organized

and chartered as the Rest Haven Home Association, the name of which was later changed to the Old Ladies' Home Association by amendment of the charter, authorized the corporation to hold such real estate as might be necessary and proper for its purposes, not exceeding $250,000 in value. The house and lot here involved is located more than one hundred miles from the Old Ladies' Home in Jackson, Mississippi, and the only reasonable conclusion is that it was within the contemplation of the testatrix that the property would have to be sold or leased at a rental in order for the inmates of the home to receive any benefit from the gift, and we think that it necessarily follows that this corporation, which was chartered for purely benevolent purposes, as recited in its charter of incorporation, could not receive the property within the intent and purpose of the will other than in trust, and under an implied obligation to appropriate it to the charitable purpose of promoting the comfort and welfare of the inmates of the Old Ladies' Home, and for that purpose alone. In other words, we are of the opinion that while no trust is expressly created by the terms of the will in the instant case, as was done by the testator in the Blackbourn case when he provided that his real estate should be applied by the Senatobia Educational Association "in maintaining and keeping in a prosperous condition that institution of learning owned by said association, and known as the 'Blackbourn College for Girls,' in Senatobia, Mississippi . . .," nevertheless, a similar intention on the part of the testatrix is implied in the case at bar, that is to say, that the property here involved should be applied in maintaining the Old Ladies' Home for the benefit of those intended to receive this bounty, "having always in view the best interest of said institution" as was expressly stated by Blackbourn in his will. If this construction of the will here involved is correct, then it follows from the decision in the Blackbourn case that the devise of the land clearly violates Section 269 of the Constitution of 1890, which was not

repealed by constitutional amendment until after the death of the testatrix herein on August 8, 1938. It may be a rather anomalous situation that at the time of the execution of this will the State was contributing by legislative appropriation the sum of $2,500 per year for the support of the Old Ladies' Home at Jackson, while one of its citizens was prohibited by the Constitution from making a gift of land to be devoted to the same purpose. Nevertheless, the Constitution then prohibited such a devise of land by will, and it is the duty of the court to enforce its mandate.

The decision of the court is therefore affirmed as to the invalidity of the devise of the real estate mentioned in the will, and is reversed and remanded wherein it held invalid the bequest of the money.

Affirmed in part, reversed in part, and remanded.

### On Suggestion of Error.

**McGehee, J.,** delivered the opinion of the court on suggestion of error.

We adhere to the former opinion rendered in this case, whereby the bequest of money made by the testatrix, Mrs. Grubbs, to the Old Ladies' Home in Jackson, Mississippi, was upheld as a valid gift under section 270 of the Constitution, and whereby the devise of her house and lot, owned by her in the town of Osyka, Mississippi, to the Old Ladies'. Home was declared void, as being in violation of section 269 of the Constitution, which prohibits such a devise, not only in favor of any religious or ecclesiastical corporation, society, denomination or association of persons, but also to any person or *body politic* in trust, either *express* or *implied,* for the purpose of being appropriated to a charitable use or purpose.

It is again urged that since the devise of this real estate was direct to the Old Ladies' Home Association, a corporation chartered "to establish and maintain a

home for aged and destitute women in the state of Mississippi," it was not a devise in trust, either express or implied, for the purpose of being appropriated to a charitable use or purpose, as prohibited by the constitutional provision in question.

In the former opinion we undertook to analyze and apply to the fact in this case the decision of Blackbourn v. Tucker et al., 72 Miss. 735, 17 So. 737, wherein Blackbourn bequeathed his real estate to the Senatobia Educational Association under an *express* provision that it was to be devoted to the purpose of "maintaining and keeping in a prosperous condition that institution of learning owned by said association, and known as the "Blackbourn College for Girls," in Senatobia, Mississippi,' " and we undertook to show that in the case at bar the testatrix bequeathed her real estate to the Old Ladies' Home, in Jackson, Mississippi, alleged to be owned by the Old Ladies' Home Association, the body politic hereinbefore mentioned, under an *implied* provision in her will that this property was to be devoted to the purpose of promoting the comfort and welfare of the inmates of the said Old Ladies' Home, which was likewise for a purely charitable purpose. Looking to the substance, rather than to the form, of these two devises, they are identical in principle. Mrs. Grubbs has clearly intended that her property should be appropriated to the purpose of promoting the welfare of the Old Ladies' Home as if she had expressly so declared. For aught that appears in the record before us, she may not even have known that there was such a corporation as the Old Ladies' Home Association. She did know that the Old Ladies' Home at Jackson was undertaking to minister to the needs and comfort of aged and destitute women in Mississippi, and it is manifest that these were the objects of her bounty when she wrote her will in her own hand. The gift is not to the corporation for the benefit of its non-stockholding members, who pay a fee of $1 each for membership therein and operate the institution through a board of

directors as a public charity; nor was there any intention to vest the title in the corporation for general purposes, since it has only one corporate function to perform under its charter, and can claim the property for no other purpose than that of appropriating it for benevolence, under its charter from the State.

Moreover, in our opinion the prohibition of section 269 of the Constitution, which was not repealed until after the will in question became effective, was not merely intended to prevent property from being devised so as to create a trust in a strict technical sense, but it rendered invalid any such devise to any corporation, society, denomination, association, person or body politic enumerated therein, where such devise is to be accepted under an obligation, either express or implied, to appropriate the same to a charitable use or purpose. An implied trust is defined in Black's Law Dictionary (3 Ed.), 1260, as "A trust raised or created by implication of law; a trust implied or presumed from circumstances."

In Rest. Trusts, section 1, under subsection c, it is said: "Although many of the rules applicable to private trusts are also applied to charitable trusts, other rules applicable to private trusts are not applied to charitable trusts, and there are rules applicable to charitable trusts which are not applied to private trusts. The fundamental distinction between private trusts and charitable trusts is that, in the case of a private trust, property is devoted to the use of specified persons who are designated as beneficiaries of the trust; whereas, in the case of a charitable trust, property is devoted to purposes beneficial to the community. The rules applicable to charitable trusts are stated in sections 348-403."

In Rest. Trusts, section 397, subsection f, it is stated that, "If the owner of property devises or bequeaths it for charitable purposes, and not only does not name a trustee, but also does not use language indicating that the property is to be held upon trust, nevertheless a charitable trust will be created."

Again, in Rest. Trusts, section 2, subsection i, it is said, "A trust can be created, or having been created can continue, although for the time being there is no trustee. Thus, if the owner of property devises or bequeaths it in trust, a trust may arise although no trustee is named in the will or the person named as trustee is dead or otherwise incapable of taking title to the property."

If the mere fact that the devise of the real estate in the present case was direct to the corporation, instead of to it for the express or implied benefit of the home, would remove it from the contemplation of section 269 of the Constitution, then it would necessarily follow that the denominational colleges in this State have been under an erroneous impression for many years as to their right to accept devises of real estate in their corporate capacities, under the terms of a will; and that there was, in reality, no need for the recent repeal of this constitutional provision. These institutions, and our religious and ecclesiastical denominations could all have acquired such real estate as may have been devised to them, if they had only adopted the expedient of letting the devise be made directly to the college or to a religious or ecclesiastical body, as the case may be, as a corporate entity, without naming the true capacity in which it may have taken the title—in trust, to be used for the purpose intended.

In Blackbourn v. Tucker, supra, it is stated, "Manifestly, the purpose of the constitution is to prevent one who will not be charitable at his own expense from being so at the expense of his heirs at law." If this be the philosophy of the provision against alienation of lands in mortmain, then the same reason would apply for holding void a devise by will direct to a body politic, when it is apparent that the testator intended that the devisee should appropriate it to charitable purposes, as would exist if the devise were made to a named devisee for the express benefit of another. On the other hand, if it be said that the purpose of the provision was merely to

prevent the accumulation of land in the corporations, societies, denominations, associations or persons and bodies politic, enumerated in the Constitution, for the purpose of being appropriated to charitable uses and purposes, then this purpose would be defeated by upholding a devise made direct to either for that implied purpose, although it would be admittedly void if made to either of them for the express purpose of being appropriated to some particular charitable use or purpose.

As to whether the prevention of the accumulation of lands for the purposes mentioned was the dominant idea, it is significant to note that section 269 of the Constitution likewise, and with equal emphasis, prohibits a devise or bequest of any money directed in a will to be raised by the sale of land. Therefore, we come back to the proposition that the framers of the Constitution undertook to prevent the disposition of land by will, either directing its sale or by vesting the title thereof, so as to permit its appropriation, either directly or indirectly, for a charitable use or purpose.

While many cases are cited where devises of land to one for the benefit of another have been held invalid, and it is argued that such was the basis of the decision, no case decided by this court is called to our attention which has upheld a devise of land under the circumstances mentioned in the Constitution, on the ground that it was made direct to a named devisee, instead of to it for the benefit of another.

In Greely v. Houston, 148 Miss. 799, 114 So. 740, 743, the court said: "Section 269 of the Constitution prohibits a devise of land direct to a religious institution or in trust for the use and benefit of such an institution 'or for the purpose of being given or appropriated to charitable uses or purposes.'" This section of the Constitution applies to a devise of land in favor of any person or body politic, the same as it does to a religious institution.

Suggestion of error overruled.

## Dissenting Opinion.

**Roberds, J.,** delivered a dissenting opinion.

In my opinion the devise of real property and the bequest of money, the proceeds of the sale of real property, were valid, and the suggestion of error should be sustained.

The provisions are "That the house and lot now owned by me in the town of Osyka, shall be given to the Old Ladies' Home in Jackson, Mississippi, . . ." And, "Any moneys remaining after all expenses shall have been met shall likewise go to the Old Ladies' Home in Jackson, Mississippi."

In this opinion reference to devise of lands will include the bequest of money provision.

Appellant is a Mississippi corporation. The charter was granted in September, 1902, under chapter 25, Code of 1892, section 838 of which empowers all corporations chartered under that chapter to take title to, and hold, real property "for its purposes," not exceeding in value $250,000. The object was to establish and maintain a home for aged and destitute women in Mississippi—a public charity. The charge for membership is not less than $1.00, to be fixed by the incorporators or directors. The management is vested in a board of not less than five directors, to be selected annually by the members.

It will be seen that the will vests directly in the corporation title to the real property. There are no restrictions or conditions of any kind in the will attached to the devise. The corporation is a legal entity, empowered by its charter to take title. In short, the title is in the corporation absolutely. It can keep or sell the property as it desires. Section 269 of the Constitution of Mississippi does not prohibit a devise of land direct to charity. It does prohibit the creation of a trust in lands for charity. This is the vital and decisive point in this case. This section does prohibit a devise, either directly or in trust, for religious purposes.

There are vital reasons for the distinction. Alienation of lands in mortmain—"dead hands"—for religious purposes, thereby depriving the crown and the intermediate lords of the right to military and other services from the tenant under the feudal system; the accumulation of lands of the kingdom in ecclesiastical organizations; execution of deeds as the result of emotion produced by priests and monks upon grantors in their last illnesses, were reasons given, at different periods, for the enactment of statutes of mortmain, and in later years the effect of depriving heirs of their rights of inheritance has been emphasized. None of these reasons apply with force to donations direct to charity, except the supposed right of heirs. This right has been over-emphasized. The same effect results in this regard where the testator by his will devises his land to individuals who would not otherwise inherit it. The right to make a will necessarily confers the right to divert the lands from the legal channel of inheritance. Often there are no direct or close heirs at law, or, if so, they are not worthy to inherit, or there may be no heirs at all. But whatever the reason for the distinction, the fact remains that under section 269 of the Mississippi Constitution a devise direct to charity is not prohibited. The case at bar proceeds throughout on the theory that there is a trust of the lands—a legal trust growing out of the mere fact of the title being in the corporation for the benefit of its members. That is not the meaning of the section. The trust covered by that section is a trust created by the testator, and not the kind of trust which corporations, public or private, bear to their stockholders or members.

I will now review the Mississippi cases nearest in point on the question under consideration:

The opinion in chief in the case at bar relies upon Blackbourn v. Tucker, 72 Miss. 735, 17 So. 737, decided in 1895. That case is entirely different from the case under consideration, and illustrates in a striking way the point I am trying to make. In that case Blackbourn de-

vised the land to the Senatobia Educational Association, to be applied by the Association, " 'in maintaining and keeping in a prosperous condition that institution of learning owned by said association, and known as the "Blackbourn College for Girls," in Senatobia, Mississippi, or in both maintaining said college and erecting such additional and suitable buildings to said college as their judgment may dictate, having always in view the best interest of said institution.' "

This is a trust, pure and simple, created by the testator. The trustee is named, the duties and powers of the trustees are set out, and the beneficiary is specified; and the trustee is a different person from the beneficiary. The title to the property is placed in one person, and the beneficial use is in another, which is the very essence of a trust. It will be noticed that even in this case Judge Whitfield was doubtful about the correctness of the decision.

In Hailey v. McLaurin's Estate, 1917, 112 Miss. 705, 73 So. 727, Dr. McLaurin bequeathed to the Jackson Bank, as trustee for the Mississippi State Charity Hospital, the sum of $25,000 out of his personal and real property for the use of the Mississippi State Charity Hospital. The Charity Hospital was empowered under chapter 115 of the Laws of 1910 to receive bequests of property. It appears that the land was located in Tennessee. The court upheld the bequest and devise.

In Maas v. Sisters of Mercy of Vicksburg, 135 Miss. 505, 99 So. 468, 469, Maas devised the land to three members of the Sisters of Mercy. The constitution and by-laws of the Sisters of Mercy require the sisters to take vows of poverty and obedience, in effect depriving the sisters of all right to own property in their individual capacity, the property owned by them individually inuring to the benefit of the society. There was then in this case a trust, the title of the property being in the three sisters for the benefit of many others.

Also, the Court dealt with this case as though it were

a religious organization, saying: "The Sisters of Mercy of the Catholic Church is an organization through which the Catholic Church carries on a large part of its religious, charitable, and educational work. It is a monastic sisterhood, established in Ireland by Catherine McAuley in 1827. Notwithstanding its origin is comparatively recent, the society has extended its charitable, religious, and educational work over a large part of the earth."

Greely v. Houston, 148 Miss. 799, 114 So. 740, was a trusteeship. Three individuals were named as trustees, the will setting out their duties, and prescribing their powers. It not only gave property to different charities, but also to three churches of different denominations. It was clearly within the prohibition of section 269 of the Constitution.

In the case of Anderson v. Gift, 156 Miss. 736, 126 So. 656, 658, the testator used this language: "I do hereby designate and appoint J. L. Holley and F. F. Anderson as, and to act as, trustees, under this my last will and testament, and I do hereby give, devise and bequeath unto them, as such trustees, in trust, all of my property, real and personal, wherever located or situated, not hereinabove specifically devised or bequeathed, to be held in trust and disposed of by them for the following purposes and none other, . . ." And provided that the trustees should sell all property, and convert it into money whenever, and in whatever manner the trustees thought best, with power to execute deeds, convey titles; and then set out what the trustees should do to promote education in Alcorn county. This was a typical trust.

In the National Bank of Greece v. Savarika, 167 Miss. 571, 148 So. 649, the testator attempted to create a trust. The will provided that the money should be forwarded to the National Bank of Greece, to be kept by it as an endowment for the benefit of a school for girls in Macedonia. It was an attempt to vest the title to the property in one person for the benefit of another.

The case at bar narrows itself to the one point—

whether the mere placing of the title to the land in the corporation is a trust for the benefit of its members, within the meaning of section 269 of the Constitution. That question has not been decided by this court, but it has been decided in other jurisdictions.

In 2 Page on Wills (2 Ed.), at page 1717, it is said, "A gift to a corporation or organization to enable it to carry out some or all of the purposes for which it was formed does not create a trust."

In Williams v. Williams, 8 N. Y. 525, the court said: "Though there is a trust, in a certain sense, attached to the property, it is not such a trust as is recognized by that name by the laws of property. The ownership of the property of a corporation is as absolute and unqualified as that which the State has in its property. Its use is restricted to certain purposes which the law deems beneficial, and its alienation is prohibited, but no other person has any estate or legal interest in it."

14 C. J. S., Charities, Sec. 45, p. 498, uses this language: "Generally speaking, a provision for a direct gift to charity or to a charitable organization is not a trust in the eyes of the law; it is a charitable donation."

In Doan v. Vestry, 103 Md. 662, 64 A. 314, 317, 7 L. R. A. (N. S.), 1119, 115 Am. St. Rep. 379, one devise was to a church for purposes which the rector might indicate, and the court said: "Holding, as we do, that the purposes and uses for which she desired this property to be used were the corporate purposes of the donee, it is immaterial that she wished the rector to determine for which of these corporate uses it should be employed, or whether this was determined by the rector or by the vestry. Inasmuch as the whole beneficial interest in the property is given to the Vestry of the Parish of the Ascension, the true reading of the will is that the estate given is not an estate given in trust, but one devised to the corporation for its general and corporate purposes. Bennett v. [Baltimore] Humane Impartial Society [91 Md. 10, 19, 45 A. 888, 889]; Woman's Foreign Missionary Society v.

Mitchell [93 Md. 199, 203, 48 A. 737, 739, 53 L. R. A. 711]. *The legal estate and beneficial interest, being thus vested in the defendant, the estate it takes is an absolute fee simple.''* (Italics according to case.)

14 C. J. S., Charities, Sec. 45, page 499, contains this statement: ''Where a will gives the residuary estate to executors to be transferred to a corporation to be formed for charitable purposes, nothing passes directly to the corporation, but it takes only by conveyance from the executors; but, after so taking, it does not hold the property in trust in the true sense of the term, but as its own, to be devoted to the purpose for which it was created.''

In re Hart's Will, 205 App. Div. 703, 200 N. Y. S. 63, it was held: ''A will which provided that 'I give and bequeath the books composing my library to the Society for Ethical Culture, . . . to dispose of same for cash or as they may deem best for the purpose of founding and supporting a school or classes for the instruction of children and the young of the nature of their physical organs,' made an absolute gift, and did not create a trust, especially as other paragraphs of the will created certain trusts by using specific words.''

The case of Hobbs v. Board of Education of Northern Baptist Convention, 1934, 126 Neb. 416, 253 N. W. 627, 633, reviews a number of cases, setting out the rule that property which is conveyed to a corporation, although organized for charitable objects, ''does not create a trust in any such sense, as that term is applied to property. The corporation uses the property, in accordance with the law of its creation, for its own purposes . . .'' A number of these cases also held that although the testator prescribes the use, objects, and manner of use of the property, this is not a trust, if these are in accordance with the authorized powers of the corporation, the act of the testator being no more than the law authorizes and directs the corporation to do.

In Preston v. Howk, 3 App. Div. 43, 37 N. Y. S. 1079, 1082, the court held that a legacy to trustees of a church

"to be used by them to help defray the expense of preaching the gospel in said church from year to year" was a gift for a corporate purpose, and not a trust.

In the case of Danforth v. City of Oshkosh, 119 Wis. 262, 97 N. W. 258, 264, the court stated the rule in these words: "The decided cases are numerous, however, which declare the conclusion that, if the use limited is distinctively and purely a corporate one, the corporation itself holds the beneficial or equitable right, which therefore merges in the legal title, if that also be held by it. The right of individuals interested in the use of the property is, as members, to compel the corporation to perform its duties as a corporation, not, as cestuis que trustent, to regulate its conduct as a trustee."

In the case of Sherman v. Richmond Hose Co., 230 N. Y. 462, 130 N. E. 613, 614, the bequest was to a corporation: "To be kept at all times intact and the income derived from the safe and judicious investment thereof to be devoted to the reasonable and proper uses of said company for whatever purposes its members acting as an organization may see fit to direct." The corporation was organized to aid in the suppression of fires in a named village. The court said, "This gift created no trust. And, the title of the property vesting at once, there was no suspension of its ownership or of its alienability.

In the case of Whitmore v. Church of the Holy Cross, 121 Me. 391, 117 A. 469, 471, the testatrix devised her homestead to the First Congregational Parish of Gardiner, "as a parsonage." The court said, "A legacy absolute in terms, but suggesting a particular use, does not create either a condition or a trust."

It would unduly lengthen this opinion to quote from other cases. See Corporation of Chamber of Commerce of New York v. Bennett, 143 Misc. 513, 257 N. Y. S. 2; Grear v. Sifford, 289 Ill. App. 450, 7 N. E. (2d) 371; Brigham v. Peter Bent Brigham Hospital, 1 Cir., 134 F. 513.

It will be seen from the foregoing cases that a devise is not rendered the less absolute, or converted into a trust, because the provision specifies that the donation shall be employed for one or more of the purposes for which the charitable organization benefiting was formed.

It is common knowledge that gifts and donations to public charities do not violate the rule against perpetuities. 10 Am. Jur. 596, section 17, and cases in footnote 18; 2 Am. L. Inst., Rest. Trusts, page 365; Sherman v. Richmond Hose Co., supra; Note Ann. Cas. 1917E, page 867.

No public policy is violated, either as to the object or result of this devise. As to the object: "At common law a trust in the nature of a public charity was looked upon with such favor that it was not permitted to fail even by reason of impossibility of carrying it out according to the conditions prescribed by the donor." Our public policy is favorable to charities. As the heart of man emerges from the savage state it begins to beat in sympathy with its fellow beings. This corporation was created by act of the Legislature, and from time to time the State of Mississippi through appropriations direct to the Old Ladies' Home, has donated to its objects, there being an appropriation to it for the current year.

As to the effect, the title is held absolutely by the corporation. There are no conditions or restrictions other than the general obligation imposed by law on all corporations for the benefit of its members, to use the property for their benefit. It can convey the property at any time.

Public policy is further shown by the recent overwhelming vote of the people fundamentally modifying sections 269 and 270 of the Constitution, by adoption of amendments thereto, permitting the devise of lands, within named limits and conditions, for religious purposes

The suggestion of error should be sustained.

**Griffith, J.**, concurs in this opinion.