485 So.2d 284 (1986)
ESTATE OF Roxie BUNCH, Deceased, S.L. Bailey and James Bailey, Executors
v.
HEIRS OF Roxie BUNCH.
No. 56465.
Supreme Court of Mississippi.
February 26, 1986.
Rehearing Denied April 9, 1986.
George L. Dorrill, Thornton, Guyton, Dorrill & Pettit, Kosciusko, for appellants.
Davis Hall Smith, Pearl, for appellee.
Before WALKER, P.J., and DAN M. LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:
Roxie Bunch, late of Attala County, Mississippi, departed this life testate on May 25, 1983. Bunch left a holographic last will and testament dated April 13, 1971, which in pertinent part provides:
... I request if there is any cash left it will go to help one or two young men through medical school white and single... .
*285 The record reflects that the cash left within the meaning of the will has accumulated to a sum in excess of $113,000.00. In the face of a challenge by the heirs at law of Roxie Bunch, the Chancellor held the bequest "void because of uncertainty and indefiniteness" and provided that the estate pass under the laws of descent and distribution. Bunch's executors have appealed.
Without question our law vests in persons such as Roxie Bunch the power to create a charitable testamentary trust for the purpose of providing financial aid to medical students. Bunch could effect such a goal, however, only if she complied with the enabling rules of that law. We answer the question whether she did so in the affirmative.
We begin as always with our search for the dominant intent of the testatrix. See In Re Estate of Granberry, 310 So.2d 708, 711 (Miss. 1975). Testatrix' intent  here to aid young persons through medical school  is a matter the language she employed puts beyond doubt. That intent having been divined, our task has merely begun, not ended, for we are charged affirmatively to assure that this dominant intent is given full effect.
That Bunch's will gives us few details beyond her statement of dominant intent necessarily calls to mind that this state historically rejected the ancient crown prerogative labeled cy pres. Carter v. Berry, 243 Miss. 321, 375, 140 So.2d 843, 855 (1962). However, we have long recognized that the court may employ a doctrine labeled equitable approximation and supplement the provisions of private and charitable testamentary dispositions. Mississippi Childrens Home Society v. City of Jackson, 230 Miss. 546, 555, 93 So.2d 483, 486 (1957). Great passion and rhetoric have been expended regarding the matter, see Carter v. Berry, supra, and Natural Bank of Greece v. Savarika, 167 Miss. 571, 148 So. 649 (1933), the legitimate purpose of which was rejection of any judicial power to seize upon the deficiencies of the testator's language to change the general object of his charitable intention, an end no one suggests here.
The extent to which the cy pres doctrine may have booked passage on the Mayflower is a matter that need not detain us. Whatever may once have been the law in this state, it is much too late to question the authority and responsibility of this Court to amend or supplement the terms of a will  whether its devise be private or charitable in nature  where such is necessary to effect the testator's dominant intent and avoid a clearly unintended consequence. See Pace v. Culpepper, 347 So.2d 1313, 1318 (Miss. 1977) ("equitable approximation"); In Re Estate of Granberry, 310 So.2d 708, 711 (Miss. 1975) ("all minor subordinate and technical rules of construction must yield to paramount intent" of testatrix); Citizens National Bank of Meridian v. Longshore, 304 So.2d 287, 290 (Miss. 1974) ("cy pres"); Carter v. Berry, 243 Miss. 321, 136 So.2d 871, modified 243 Miss. 321, 376, 140 So.2d 843, 855 (1962) ("equitable approximation").
Our most instructive case is In Re Estate of Hall, 193 So.2d 587 (Miss. 1967). In that case the decedent provided for the establishment of a charitable trust in the following language:
Then proceeds go, as loan, to educate poor boys and girls as long as world stands  a Julia Weissinger Bailey Memorial fund  which in course of time will be big enough to keep a number in College yearly .
Estate of Hall, 193 So.2d at 591.
Construing this language, this Court held that the trial court
was correct in holding that a charitable trust was created by the language of the letter-wills for the education of poor girls and boys in a Christian college (preferably a Methodist college).
15 Am.Jur.2d, Charities, section 11 (1964) has this to say on charitable trusts:

It is the fixed policy of the law to uphold charitable gifts and trusts whenever possible, and this is a fundamental principle in the construction of *286 charitable trusts. Of course, a true `charitable' nature of a gift must first appear before the courts will extend themselves in its support. Some measure of public benefit must appear or be in prospect from sustaining the gift, and it must appear to be capable of administration and control by the court, * * *. (emphasis added)
The advancement of education and the relief of poverty are two of the favorite subjects of charitable trusts. Both causes have been held many times to be truly charitable in nature and of great benefit to the public. Both are present in the charitable trust set up by the decedent in the instant case when she provides for the establishment of a trust fund for the education of poor boys and girls in a Christian college.
... In the case of a charitable trust the beneficial interest is not given to individual beneficiaries, but the property is devoted to the accomplishment of purposes which are beneficial or are supposed to be beneficial to the community, and the persons who are to receive benefits from the trust need not be designated. [citation omitted]
Estate of Hall, 193 So.2d at 591-92.
In the context of charitable testamentary trusts, our law has heretofore evolved to the point where we may recognize as a part of the positive law of this state, the rule that: where the will shows the testator's general intention that his or her property be applied to a given charitable purpose, the court can and generally must make such supplementary and administrative provisions as may be necessary to effect the testator's purpose. In Re Estate of Hall, supra; see also, Page, The Law of Wills § 41.33 (Bowe, et al, 1961). As the cases cited suggest, there has been much debate regarding the nature and historical source of this power. See National Bank of Greece v. Savarika, 167 Miss. 571, 589-91, 148 So. 649, 653-55 (1933). The debate misses the mark. That the power exists and has been recognized in our law is what counts. The labels fade into insignificance in the face of the content of the power, a power which, if anything, we will employ with greater solicitude in the case of a chartiable trust than for the private trust.
Undaunted, Bunch's heirs struggle mightily to convince us that the $113,000 should be theirs. They rely heavily upon National Bank of Greece v. Savarika, 167 Miss. 571, 148 So. 649 (1933). That case  which held invalid and unenforceable a charitable trust purportedly created by language facially similar to that in the case at bar  is effectively distinguished by reference to one overriding core fact. In Savarika the trust was to benefit "a school for girls at Bougasticon, Macedonia, Greece". The record there reflected that there was no such school and that the trust was otherwise impossible of performance. Here there clearly are medical schools within the meaning and contemplation of Bunch's will. There are here no substantial impediments to performance or administration remotely comparable to those in Savarika. Moreover, the language of the Savarika opinion, to the extent that it may be inconsistent with Estate of Hall, must be deemed modified. Estate of Hall has been on the books for almost twenty years without modification. It must be treated as the core precedent to which we turn for aid in resolution of the present controversy.
All but ignoring Estate of Hall, the Bunch heirs argue that the will is vague and indefinite and therefore fails. The Chancellor agreed. No doubt there are details to be fleshed out, but one part of the will is clear and unambiguous: the testatrix's dominant intention (put in more formal language) to establish a charitable trust for the benefit of young people attending medical school. This is the one part that counts. The phrase "one or two young men" necessarily should be construed in the context of the testatrix's obvious unawareness of just how much money would be available. The language no doubt equates with "a few". The will was made in 1971, twelve years before her death. In the context of the fund we now know to be available, that language is necessarily *287 construed to mean that no doubt small number of young people whose medical education may reasonably be aided with the funds available.
The Bunch heirs complain that the will doesn't tell us the identity and type of medical school. Little imagination is required to solve this one. It means any accredited medical school in the United States. Complaint is also made of the absence of criteria for selection, such as residence and need. Again, the language of the will is clear. It provides neither residence nor need criteria for selection. There is nothing in the will that justifies imposition of any geographical limitations or residence requirement. Certainly use of the word "help" implies providing financial aid to students demonstrating a reasonable promise of success in medical school and a reasonable degree of need, but there is no basis for requiring a showing of poverty.
A final suggested problem with the will is its failure to name a trustee. The Chancellor's opinion notes that "trustees are not named, although this alone is not a fatal omission". In the case of a charitable trust such as this, our law directs that we not allow the trust to fail for want of a trustee. Such a trust will fail for want of a trustee only where the testatrix has demonstrated an intention that the trust should not arise or should not continue unless the person named by him or her should accept the office of trustee and so serve. 4 Scott, The Law of Trusts § 397 (2d Ed. 1956).
These matters are details that we need not be concerned with today. We merely reiterate what this Court said in Estate of Hall:
The chancery court has the power and authority to appoint a trustee or trustees to manage the trust property, to direct them as to the method of selecting beneficiaries, and the distribution of trust funds, and to otherwise administer the trust property.
193 So.2d at 592.
REVERSED AND REMANDED
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.